AF Approval ___ꟺ𝘕                             Chief Approval 𝘚𝘝

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                CASE NO. 8:16-cr-413-T-30TGW

MOSES WILCOX

## PLEA AGREEMENT

Pursuant to Fed. R. Crim. P. 11(c), the United States of America, by A. Lee Bentley, III, United States Attorney for the Middle District of Florida, and the defendant, MOSES WILCOX, and the attorney for the defendant, Stephen M. Crawford, mutually agree as follows:

**A.**    **Particularized Terms**

    1.    <u>Count(s) Pleading To</u>

        The defendant shall enter a plea of guilty to Counts One and Two of the Indictment.  Count One charges the defendant with conspiracy to commit theft of government funds and aggravated ID theft, in violation of 18 U.S.C. § 371.  Count Two charges the defendant with theft of government funds, in violation of 18 U.S.C. § 641.

    2.    <u>Maximum Penalties</u>

        Count One carries a maximum sentence of 5 years' imprisonment, a fine of $250,000.00, a term of supervised release of not more

Defendant's Initials _mAW_

than 3 years, and a special assessment of $100 per felony count for individuals. Count Two carries a maximum sentence of 10 years' imprisonment, a fine of $250,000.00, a term of supervised release of not more than 3 years, and a special assessment of $100 per felony count for individuals. With respect to certain offenses, the Court shall order the defendant to make restitution to any victim of the offense(s), and with respect to other offenses, the Court may order the defendant to make restitution to any victim of the offense(s), or to the community, as set forth below.

3.    Elements of the Offense(s)

The defendant acknowledges understanding the nature and elements of the offense(s) with which defendant has been charged and to which defendant is pleading guilty.  The elements of Count One are:

First:        That two or more persons in some way agreed to try to accomplish a shared and unlawful plan;

Second:       That the Defendant knew the unlawful purpose of the plan and willfully joined it;

Third:        That during the conspiracy, one of the conspirators knowingly engaged in at least one overt act as described in the indictment; and

Fourth:       That the overt act was committed at or about the time alleged and with the purpose of carrying out or accomplishing some object of the conspiracy.

2

Defendant's Initials _MAW_

The elements of Count Two are:

First:       That the money or property described in the indictment belonged to the United States;

Second:   That the Defendant embezzled, stole, or knowingly converted the money or property to his own use or to someone else's use;

Third:     That the Defendant knowingly and willfully intended to deprive the owner of the use or benefit of the money or property; and

Fourth:   That the money or property had a value greater than $1,000.

4.     <u>Counts Dismissed</u>

At the time of sentencing, the remaining count(s) against the defendant, Count Three through Seven, will be dismissed pursuant to Fed. R. Crim. P. 11(c)(1)(A).

5.     <u>No Further Charges</u>

If the Court accepts this plea agreement, the United States Attorney's Office for the Middle District of Florida agrees not to charge defendant with committing any other federal criminal offenses known to the United States Attorney's Office at the time of the execution of this agreement, related to the conduct giving rise to this plea agreement.

6.     <u>Mandatory Restitution to Victim of Offense of Conviction</u>

Pursuant to 18 U.S.C. § 3663A(a) and (b), defendant agrees to make full restitution to the Internal Revenue Service.

3

Defendant's Initials _MAW_

7.    <u>Guidelines Sentence</u>

Pursuant to Fed. R. Crim. P. 11(c)(1)(B), the United States will recommend to the Court that the defendant be sentenced within the defendant's applicable guidelines range as determined by the Court pursuant to the United States Sentencing Guidelines, as adjusted by any departure the United States has agreed to recommend in this plea agreement.  The parties understand that such a recommendation is not binding on the Court and that, if it is not accepted by this Court, neither the United States nor the defendant will be allowed to withdraw from the plea agreement, and the defendant will not be allowed to withdraw from the plea of guilty.

8.    <u>Acceptance of Responsibility - Three Levels</u>

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a two-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a).  The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

4

Defendant's Initials _MAW_

Further, at the time of sentencing, if the defendant's offense level prior to operation of subsection (a) is level 16 or greater, and if the defendant complies with the provisions of USSG §3E1.1(b) and all terms of this Plea Agreement, including but not limited to, the timely submission of the financial affidavit referenced in Paragraph B.5., the United States agrees to file a motion pursuant to USSG §3E1.1(b) for a downward adjustment of one additional level. The defendant understands that the determination as to whether the defendant has qualified for a downward adjustment of a third level for acceptance of responsibility rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that the defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

9.    Low End

At the time of sentencing, and in the event that no adverse information is received suggesting such a recommendation to be unwarranted, the United States will not oppose the defendant's request to the Court that the defendant receive a sentence at the low end of the applicable guideline range, as calculated by the Court. The defendant understands that this recommendation or request is not binding on the Court, and if not accepted by the Court, the defendant will not be allowed to withdraw from the plea.

Defendant's Initials _Mbv_

10.   <u>Cooperation - Substantial Assistance to be Considered</u>

Defendant agrees to cooperate fully with the United States in the investigation and prosecution of other persons, and to testify, subject to a prosecution for perjury or making a false statement, fully and truthfully before any federal court proceeding or federal grand jury in connection with the charges in this case and other matters, such cooperation to further include a full and complete disclosure of all relevant information, including production of any and all books, papers, documents, and other objects in defendant's possession or control, and to be reasonably available for interviews which the United States may require.  If the cooperation is completed prior to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a motion at the time of sentencing recommending (1) a downward departure from the applicable guideline range pursuant to USSG §5K1.1, or (2) the imposition of a sentence below a statutory minimum, if any, pursuant to 18 U.S.C. § 3553(e), or (3) both.  If the cooperation is completed subsequent to sentencing, the government agrees to consider whether such cooperation qualifies as "substantial assistance" in accordance with the policy of the United States Attorney for the Middle District of Florida, warranting the filing of a

6

Defendant's Initials _MAW_

motion for a reduction of sentence within one year of the imposition of sentence pursuant to Fed. R. Crim. P. 35(b). In any case, the defendant understands that the determination as to whether "substantial assistance" has been provided or what type of motion related thereto will be filed, if any, rests solely with the United States Attorney for the Middle District of Florida, and the defendant agrees that defendant cannot and will not challenge that determination, whether by appeal, collateral attack, or otherwise.

11.    Use of Information - Section 1B1.8

Pursuant to USSG §1B1.8(a), the United States agrees that no self-incriminating information which the defendant may provide during the course of defendant's cooperation and pursuant to this agreement shall be used in determining the applicable sentencing guideline range, subject to the restrictions and limitations set forth in USSG §1B1.8(b).

12.    Cooperation - Responsibilities of Parties

a.    The government will make known to the Court and other relevant authorities the nature and extent of defendant's cooperation and any other mitigating circumstances indicative of the defendant's rehabilitative intent by assuming the fundamental civic duty of reporting crime. However, the defendant understands that the government can make no representation

7

Defendant's Initials _mpw_

that the Court will impose a lesser sentence solely on account of, or in consideration of, such cooperation.

b.     It is understood that should the defendant knowingly provide incomplete or untruthful testimony, statements, or information pursuant to this agreement, or should the defendant falsely implicate or incriminate any person, or should the defendant fail to voluntarily and unreservedly disclose and provide full, complete, truthful, and honest knowledge, information, and cooperation regarding any of the matters noted herein, the following conditions shall apply:

(1)     The defendant may be prosecuted for any perjury or false declarations, if any, committed while testifying pursuant to this agreement, or for obstruction of justice.

(2)     The United States may prosecute the defendant for the charges which are to be dismissed pursuant to this agreement, if any, and may either seek reinstatement of or refile such charges and prosecute the defendant thereon in the event such charges have been dismissed pursuant to this agreement.  With regard to such charges, if any, which have been dismissed, the defendant, being fully aware of the nature of all such charges now pending in the instant case, and being further aware of defendant's rights, as to all felony charges pending in such cases (those offenses punishable by

8

Defendant's Initials _mɑw_

imprisonment for a term of over one year), to not be held to answer to said felony charges unless on a presentment or indictment of a grand jury, and further being aware that all such felony charges in the instant case have heretofore properly been returned by the indictment of a grand jury, does hereby agree to reinstatement of such charges by recision of any order dismissing them or, alternatively, does hereby waive, in open court, prosecution by indictment and consents that the United States may proceed by information instead of by indictment with regard to any felony charges which may be dismissed in the instant case, pursuant to this plea agreement, and the defendant further agrees to waive the statute of limitations and any speedy trial claims on such charges.

(3)     The United States may prosecute the defendant for any offenses set forth herein, if any, the prosecution of which in accordance with this agreement, the United States agrees to forego, and the defendant agrees to waive the statute of limitations and any speedy trial claims as to any such offenses.

(4)     The government may use against the defendant the defendant's own admissions and statements and the information and books, papers, documents, and objects that the defendant has furnished in the course of the defendant's cooperation with the government.

9

Defendant's Initials _M.A.W._

(5)     The defendant will not be permitted to withdraw the guilty pleas to those counts to which defendant hereby agrees to plead in the instant case but, in that event, defendant will be entitled to the sentencing limitations, if any, set forth in this plea agreement, with regard to those counts to which the defendant has pled; or in the alternative, at the option of the United States, the United States may move the Court to declare this entire plea agreement null and void.

13.   Forfeiture of Assets

The defendant agrees to forfeit to the United States immediately and voluntarily any and all assets and property, or portions thereof, subject to forfeiture, pursuant to 18 U.S.C. § 981(a)(1)(c) and 28 U.S.C. § 2461(c), whether in the possession or control of the United States, the defendant or defendant's nominees.  The assets to be forfeited specifically include, but are not limited to, a money judgment in the amount of $389,479.07, representing the amount of proceeds obtained as a result of the offenses charged in Counts One and Two.  The defendant also agrees to waive all constitutional, statutory and procedural challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement on any grounds, including that the forfeiture described herein constitutes an excessive fine, was not properly noticed in the charging

10

Defendant's Initials _m̧q̧w_

instrument, addressed by the Court at the time of the guilty plea, announced at sentencing, or incorporated into the judgment.

The defendant admits and agrees that the conduct described in the Factual Basis below provides a sufficient factual and statutory basis for the forfeiture of the property sought by the government. Pursuant to Rule 32.2(b)(4), the defendant agrees that the preliminary order of forfeiture will satisfy the notice requirement and will be final as to the defendant at the time it is entered. In the event the forfeiture is omitted from the judgment, the defendant agrees that the forfeiture order may be incorporated into the written judgment at any time pursuant to Rule 36.

The defendant agrees that the United States shall, at its option, be entitled to the forfeiture of any property (substitute assets) of the defendant up to the value of the money judgment. The defendant further agrees that the United States is seeking a money judgment because, as a result of the defendant's actions, the criminal proceeds cannot be located despite the exercise of due diligence. The defendant agrees that forfeiture of substitute assets as authorized herein shall not be deemed an alteration of the defendant's sentence.

The defendant agrees to take all steps necessary to identify and locate all substitute assets and to transfer custody of such assets to the United

11

Defendant's Initials _mhw_

States before the defendant's sentencing.  To that end, the defendant agrees to make a full and complete disclosure of all assets over which defendant exercises control directly or indirectly, including all assets held by nominees, to execute any documents requested by the United States to obtain from any other parties by lawful means any records of assets owned by the defendant, and to consent to the release of the defendant's tax returns for the previous five years. The defendant agrees to be interviewed by the government, prior to and after sentencing, regarding such assets.  The defendant further agrees to be polygraphed on the issue of assets, if it is deemed necessary by the United States.  The defendant agrees that Federal Rule of Criminal Procedure 11 and USSG § 1B1.8 will not protect from forfeiture assets disclosed by the defendant as part of the defendant's cooperation.

The defendant agrees to take all steps necessary to assist the government in obtaining clear title to any substitute assets before the defendant's sentencing.  In addition to providing full and complete information about substitute assets, these steps include, but are not limited to, the surrender of title, the signing of a consent decree of forfeiture, and signing of any other documents necessary to effectuate such transfers.

12

Defendant's Initials _MAW_

Forfeiture of the defendant's assets shall not be treated as satisfaction of any fine, restitution, cost of imprisonment, or any other penalty the Court may impose upon the defendant in addition to forfeiture.

The defendant agrees that, in the event the Court determines that the defendant has breached this section of the Plea Agreement, the defendant may be found ineligible for a reduction in the Guidelines calculation for acceptance of responsibility and substantial assistance, and may be eligible for an obstruction of justice enhancement.

The defendant agrees that the forfeiture provisions of this plea agreement are intended to, and will, survive the defendant, notwithstanding the abatement of any underlying criminal conviction after the execution of this agreement.  The forfeitability of any particular property pursuant to this agreement shall be determined as if the defendant had survived, and that determination shall be binding upon defendant's heirs, successors and assigns until the agreed forfeiture, including any agreed money judgment amount, is collected in full.

**B.      Standard Terms and Conditions**

1.      Restitution, Special Assessment and Fine

The defendant understands and agrees that the Court, in addition to or in lieu of any other penalty, shall order the defendant to make restitution

13

Defendant's Initials m̲ʌ̲w̲

to any victim of the offense(s), pursuant to 18 U.S.C. § 3663A, for all offenses

described in 18 U.S.C. § 3663A(c)(1); and the Court may order the defendant

to make restitution to any victim of the offense(s), pursuant to 18 U.S.C. §

3663, including restitution as to all counts charged, whether or not the

defendant enters a plea of guilty to such counts, and whether or not such

counts are dismissed pursuant to this agreement. The defendant further

understands that compliance with any restitution payment plan imposed by

the Court in no way precludes the United States from simultaneously pursuing

other statutory remedies for collecting restitution (28 U.S.C. § 3003(b)(2)),

including, but not limited to, garnishment and execution, pursuant to the

Mandatory Victims Restitution Act, in order to ensure that the defendant's

restitution obligation is satisfied.

On each count to which a plea of guilty is entered, the Court

shall impose a special assessment pursuant to 18 U.S.C. § 3013. The special

assessment is due on the date of sentencing.

The defendant understands that this agreement imposes no

limitation as to fine.

2.    <u>Supervised Release</u>

The defendant understands that the offense(s) to which the

defendant is pleading provide(s) for imposition of a term of supervised release

14

Defendant's Initials _mHw_

upon release from imprisonment, and that, if the defendant should violate the conditions of release, the defendant would be subject to a further term of imprisonment.

3.    <u>Immigration Consequences of Pleading Guilty</u>

The defendant has been advised and understands that, upon conviction, a defendant who is not a United States citizen may be removed from the United States, denied citizenship, and denied admission to the United States in the future.

4.    <u>Sentencing Information</u>

The United States reserves its right and obligation to report to the Court and the United States Probation Office all information concerning the background, character, and conduct of the defendant, to provide relevant factual information, including the totality of the defendant's criminal activities, if any, not limited to the count(s) to which defendant pleads, to respond to comments made by the defendant or defendant's counsel, and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject to any limitations set forth herein, if any.

15

Defendant's Initials _MAW_

5.    Financial Disclosures

Pursuant to 18 U.S.C. § 3664(d)(3) and Fed. R. Crim. P.

32(d)(2)(A)(ii), the defendant agrees to complete and submit to the United

States Attorney's Office within 30 days of execution of this agreement an

affidavit reflecting the defendant's financial condition.  The defendant

promises that his financial statement and disclosures will be complete,

accurate and truthful and will include all assets in which he has any interest or

over which the defendant exercises control, directly or indirectly, including

those held by a spouse, dependent, nominee or other third party.  The

defendant further agrees to execute any documents requested by the United

States needed to obtain from any third parties any records of assets owned by

the defendant, directly or through a nominee, and, by the execution of this

Plea Agreement, consents to the release of the defendant's tax returns for the

previous five years.  The defendant similarly agrees and authorizes the United

States Attorney's Office to provide to, and obtain from, the United States

Probation Office, the financial affidavit, any of the defendant's federal, state,

and local tax returns, bank records and any other financial information

concerning the defendant, for the purpose of making any recommendations to

the Court and for collecting any assessments, fines, restitution, or forfeiture

ordered by the Court.  The defendant expressly authorizes the United States

16

Defendant's Initials _MAW_

Attorney's Office to obtain current credit reports in order to evaluate the defendant's ability to satisfy any financial obligation imposed by the Court.

6.    Sentencing Recommendations

It is understood by the parties that the Court is neither a party to nor bound by this agreement. The Court may accept or reject the agreement, or defer a decision until it has had an opportunity to consider the presentence report prepared by the United States Probation Office. The defendant understands and acknowledges that, although the parties are permitted to make recommendations and present arguments to the Court, the sentence will be determined solely by the Court, with the assistance of the United States Probation Office. Defendant further understands and acknowledges that any discussions between defendant or defendant's attorney and the attorney or other agents for the government regarding any recommendations by the government are not binding on the Court and that, should any recommendations be rejected, defendant will not be permitted to withdraw defendant's plea pursuant to this plea agreement. The government expressly reserves the right to support and defend any decision that the Court may make with regard to the defendant's sentence, whether or not such decision is consistent with the government's recommendations contained herein.

17

Defendant's Initials _mᴧw_

7.     <u>Defendant's Waiver of Right to Appeal the Sentence</u>

The defendant agrees that this Court has jurisdiction and authority to impose any sentence up to the statutory maximum and expressly waives the right to appeal defendant's sentence on any ground, including the ground that the Court erred in determining the applicable guidelines range pursuant to the United States Sentencing Guidelines, except (a) the ground that the sentence exceeds the defendant's applicable guidelines range <u>as determined by the Court</u> pursuant to the United States Sentencing Guidelines; (b) the ground that the sentence exceeds the statutory maximum penalty; or (c) the ground that the sentence violates the Eighth Amendment to the Constitution; provided, however, that if the government exercises its right to appeal the sentence imposed, as authorized by 18 U.S.C. § 3742(b), then the defendant is released from his waiver and may appeal the sentence as authorized by 18 U.S.C. § 3742(a).

8.     <u>Middle District of Florida Agreement</u>

It is further understood that this agreement is limited to the Office of the United States Attorney for the Middle District of Florida and cannot bind other federal, state, or local prosecuting authorities, although this office will bring defendant's cooperation, if any, to the attention of other prosecuting officers or others, if requested.

Defendant's Initials _mmw_

9.     Filing of Agreement

This agreement shall be presented to the Court, in open court or in camera, in whole or in part, upon a showing of good cause, and filed in this cause, at the time of defendant's entry of a plea of guilty pursuant hereto.

10.     Voluntariness

The defendant acknowledges that defendant is entering into this agreement and is pleading guilty freely and voluntarily without reliance upon any discussions between the attorney for the government and the defendant and defendant's attorney and without promise of benefit of any kind (other than the concessions contained herein), and without threats, force, intimidation, or coercion of any kind. The defendant further acknowledges defendant's understanding of the nature of the offense or offenses to which defendant is pleading guilty and the elements thereof, including the penalties provided by law, and defendant's complete satisfaction with the representation and advice received from defendant's undersigned counsel (if any). The defendant also understands that defendant has the right to plead not guilty or to persist in that plea if it has already been made, and that defendant has the right to be tried by a jury with the assistance of counsel, the right to confront and cross-examine the witnesses against defendant, the right against compulsory self-incrimination, and the right to compulsory process for the

19

Defendant's Initials _mᴀᴡ_

attendance of witnesses to testify in defendant's defense; but, by pleading guilty, defendant waives or gives up those rights and there will be no trial. The defendant further understands that if defendant pleads guilty, the Court may ask defendant questions about the offense or offenses to which defendant pleaded, and if defendant answers those questions under oath, on the record, and in the presence of counsel (if any), defendant's answers may later be used against defendant in a prosecution for perjury or false statement. The defendant also understands that defendant will be adjudicated guilty of the offenses to which defendant has pleaded and, if any of such offenses are felonies, may thereby be deprived of certain rights, such as the right to vote, to hold public office, to serve on a jury, or to have possession of firearms.

11.    Factual Basis

Defendant is pleading guilty because defendant is in fact guilty. The defendant certifies that defendant does hereby admit that the facts set forth below are true, and were this case to go to trial, the United States would be able to prove those specific facts and others beyond a reasonable doubt.

FACTS

This case arose from the investigation by a joint task force which has been poring through records of cash withdrawals at local casinos and at ATMs by individuals who used debit cards loaded with fraudulent tax refunds. In this

Defendant's Initials _MMW_

particular case, bank records reflect that the various conspirators opened accounts at H&R Block Bank or other financial institutions prior to the time that their tax return filing activity started. They used those accounts to receive the tax refunds payments which the IRS sent out during the course of this conspiracy.

One of the conspirators who started in this activity before any of the others opened accounts at several different financial institutions, in his own name and in the name of a business. Consequently, the IRS received fraudulent income tax returns which sought the deposit of refunds into his own account or that of his business. The IRS sent that money electronically to those accounts on numerous occasions. Within a day or less of the deposit of the refund proceeds, debit card purchases and withdrawals of cash at the Hard Rock Casino began. The taxpayers whose names appeared on the tax returns which had generated those refund deposits were mostly deceased persons.

This subject's co-conspirators were busy during this same time period as well. They also opened accounts at various financial institutions such as H&R Block Bank, TD Bank, and the Bank of America. These included the defendant, Moses Wilcox, Deandre Johnson, and others. They each had varying degrees of success with respect to income tax refund deposits being deposited into their debit card accounts. The conspirators were successful in

Defendant's Initials _MAW_

causing the IRS to issue approximately $389,479.07 in tax refunds during the conspiracy.

Wilcox opened an account at H&R Block Bank on March 5, 2012. That account bore his own name and the mailing address on that account matched the information on file with the DHSMV for the defendant. That account was the destination for a large number of tax refunds which were the result of the filing of other fraudulent income tax returns after March 2012. For example, the IRS received a Form 1040 electronically filed in the name of BP for tax year 2011 on March 14, 2012. That return reflected $23,795 in capital gains for that year as the sum total of BP's adjusted gross income. The return yielded a refund in the amount of $9,872 and requested that that refund be electronically sent to Wilcox's H&R Block Bank account. The IP address which filed that return was also the source of nine other fraudulent tax returns filed with the IRS during the period between March and July, 2012. Those other tax returns also requested that the IRS send refunds in varying amounts to bank accounts in the names of other conspirators.

BP told the IRS that she was retired and had not filed a tax return since 2000 and that she did not receive the 2011 tax refund. BP had no knowledge of either Wilcox or anyone else involved in this scheme and had not

22

Defendant's Initials  _mHw_

authorized anyone to file a tax return on her behalf or to receive any refunds on her behalf into any bank account at H&R Block.

On March 21, 2012, the BP refund of $9,822 went into the Wilcox H&R Block Bank account. It was the only significant source of money in that account during the month of March. Once that tax refund money hit the Wilcox account, there ensued a number of $1,000 withdrawals from the ATM at the Seminole Hard Rock Casino. There were multiple $1,000 cash withdrawals from that ATM (two a day) on March 21, 22, and 23, and other ATM cash withdrawals ensued at other locations as well in smaller amounts of $400 to $500 apiece. As a result, by March 31, Wilcox's account had only $12.29 remaining in it.

This same pattern repeated with respect to other income tax returns and other tax refunds. The IRS would send those refunds electronically to debit card accounts in Wilcox's name and then cash withdrawals began almost immediately. Some occurred at the casino and many others via ATM machines.

Agents later interviewed WILCOX. He first claimed that he had no idea as to whether these refunds were fraudulent or not. He later began to reverse course and admitted that the money he got was "probably" "drop

23

Defendant's Initials _MAW_

money" but insisted that he did not know that for sure. He claimed he did not want to "know too much" about any of this activity at the time.

When agents asked WILCOX about the trips to the casino, WILCOX first insisted that he could not recall them but later admitted the authenticity of the records when agents showed him the Hard Rock receipts with his name and signature on them. WILCOX did admit that he withdrew money from the casino at the direction of others in the conspiracy, who told him that one could make larger and quicker withdrawals at the casino than at a bank or ATM. Finally, agents showed WILCOX a Facebook picture from early 2012 which showed Wilcox sitting in what appears to be the backseat of a car, holding a large pile of what appears to be cash on his lap. Wilcox admitted that it was his picture and that the money on his lap came from tax refunds.

A co-conspirator, cooperating with the United States, has indicated that Wilcox had introduced him to one of the organizers of this conspiracy in 2012. According to this cooperating individual, he went to banks with Wilcox and opened accounts in his own name there, at the direction of Wilcox. The cooperating individual stated that he knew that the bank accounts were for the purpose of receiving tax refund "drop" money. He then texted the account and routing numbers to Wilcox and the conspirators would then use those accounts numbers to prepare and file tax returns. Once refund money came

24

Defendant's Initials _mmv_

into the accounts, Wilcox would contact him and they would travel together to the casino to withdraw the funds. He did this for a share of the refund proceeds.

12.   Entire Agreement

This plea agreement constitutes the entire agreement between the government and the defendant with respect to the aforementioned guilty plea and no other promises, agreements, or representations exist or have been made to the defendant or defendant's attorney with regard to such guilty plea.

25

Defendant's Initials _M.H._

13.   Certification

The defendant and defendant's counsel certify that this plea

agreement has been read in its entirety by (or has been read to) the defendant

and that defendant fully understands its terms.

DATED this ___31___ day of ___JANUARY___, 2017.

A. LEE BENTLEY, III
United States Attorney

_____
Moses Wilcox
Defendant

_____
Jay L. Hoffer
Assistant United States Attorney

_____
Stephen M. Crawford
Attorney for Defendant

_____
Simon A. Gaugush
Assistant United States Attorney
Chief, Economic Crimes Section

26